That an indictment for betting at a game with cards under article 557 needs to state that such game was not at a private residence was denied by Judge Ramsey in Purvis v. State, 52 Tex. Cr. R. 343, 107 S. W. 55, and in Singleton v. State, 52 Tex. Cr. R. 625, 111 S. W. 736, and approved by Judge Davidson in Vinson v. State, 58 Tex. Cr. R. 47, 124 S. W. 652. We are aware of the fact that later this rule seems changed under a different personnel of the court in Purvis v. State, 62 Tex. Cr. R. 302, 137 S. W. 701, Ann. Cas. 1913C, 536; Chapman v. State, 63 Tex. Cr. R. 513, 140 S. W. 441; George v. State, 65 Tex. Cr. R. 91, 143 S. W. 621; Shelton v. State, 65 Tex. Cr. R. 489, 145 S. W. 340.

We do not quite see how this fact affects the question now before us. Appellant cites no authority holding that an indictment under article 559 should contain the negative provision contended for, and this court knows of no such authority. Even if the Legislature saw fit, in enacting the misdemeanor statute (article 557) penalizing the mere bettor or wagerer at certain games, to ingraft a proviso exempting from prosecution those who so bet at such games·when played at a private residence occupied by a family, this would afford no justification or excuse to this court for now in substance ingrafting such proviso on a different statute, a felony statute (article 559), penalizing those who prepare for and carry on gambling as a business. For illustration: Suppose the accused should fit up his private residence, in which he dwelt with his family, with card tables, cards, and other gambling paraphernalia, and admit that his purpose in so doing was that it should be used as a place for gaming, for people to bet and wager at cards. Upon what reasonable hypothesis could an indictment charging him with so doing be held bad, because it failed to negative the fact that such premises so fitted up and so kept were a private residence? We do not think it necessary that the indictment state that such was not a private residence. Each of the authorities cited by appellant and many others have been examined in this connection. We think the Sanchez Case, 90 Tex. Cr. R. 156. 233 S. W. 982, and the cases cited in the original opinion announce the correct holdings.

This being the only point raised in appellant's motion for rehearing, and being unable to agree therewith, the motion will be overruled.

## SOVEREIGN CAMP, W. O. W., v. WALKER. (No. 2095.)

(Court of Civil Appeals of Texas. Amarillo. June 27, 1923. Motion for Rehearing Dismissed on Agreement Oct. 3, 1923.)

1. Insurance ⊜⟹665(5)—Evidence held not to show insured was making unlawful assault when killed.

In an action on a life policy, evidence *held* not to support defense that insured was killed while making an unlawful assault.

2. Trial ⊜⟹296(2)—Error in instruction limiting insurer's defense of unlawful assault by insured to very time of death held cured by other instruction.

In an action on a life policy, defended on the ground that insured was killed while making an unlawful assault, any error in the instruction limiting the defense to an assault committed at the very time of insured's death, which was not objected to by insurer, was cured by a special instruction that, if insured was killed in consequence of making an assault, insurer was not liable.

Appeal from District Court, Oldham County; Reese Tatum, Judge.

Action by Mrs. Virgal A. Walker against the·Sovereign Camp of the Woodmen of the World. Judgment for plaintiff, and defendant appeals. Affirmed.

C. E. Gustavus and E. O. Northcutt, both of Amarillo, and De E. Bradshaw, of Omaha, Neb., for appellant.

Chas. Ingram, of Vega, for appellee.

COLE, Sp. C. J. Mrs. Virgal A. Walker, appellee, filed this suit in the district court of Oldham county, Tex., against appellant, to recover a judgment upon an insurance policy issued by it upon the life of David E. Walker, her deceased husband, in which she was named as beneficiary. There is no issue as to the fact that the policy was issued, and that the deceased was in good standing at the time of his death, and no issue upon the death of deceased. The defendant below answered, alleging that by the terms of the policy, and its constitution and by-laws, the policy should become void in the event that the insured came to his death in the commission of a crime, or in consequence of any violation of the laws, whether sane or insane, of the state of Texas, United States, or any other state or province, and further alleging that the deceased came to his death as a consequence of an unlawful assault with a knife upon the person of one H. C. Harding. This issue was tried to a jury under a charge of the court, in which he had properly instructed the jury as to what constituted an assault, except the main charge limited the defense to an assault committed at the

very time of his death. The defendant below filed an objection to the charge upon this ground, and asked a special charge, which was given by the court, which, in substance, instructed the jury that, if the deceased had at any time before his death committed an assault upon the said Harding, the jury should find for the defendant. The jury, under the instruction of the court, returned a verdict for the appellee for the sum of $982.64, upon which verdict judgment was entered. The only issues presented to this court are whether the verdict of the jury was supported by the evidence, and whether the court did not commit reversible error in his main charge limiting it as above stated.

[1] The evidence is, in substance, as follows: That the deceased, David E. Walker, who was an employee of the said Harding, came to the ranch house of the said Harding and sat down upon his heels on the south side of a door, facing east; that the said Harding was sitting in a chair a little north of the door and east thereof, some 15 feet from where the deceased was sitting. The said Harding and his wife testified in behalf of the defendant below that there was rather an extended quarrel between the deceased and the said Harding, during all of which time the deceased sat upon his heels or feet whittling; that after some criminating statements made by Harding the deceased arose and moved easterly, as if approaching the said Harding, some two or three steps, with a knife raised in his hand, and using violent language; that the said Harding moved behind his chair and with a 44-caliber single action six-shooter fired rapidly two bullets into the body of the deceased; that the deceased then backed away some 20 steps from where the said Harding had been sitting; and that the said Harding again, at close range, fired two shots into the body of deceased, firing at his head. The evidence discloses that the deceased was whittling just previous to the shooting, with an ordinary pocket knife, with a blade about 2½ inches long; that he knew the said Harding carried a gun, and knew the character of gun that he did carry, having seen and examined it. The undertaker testified that he found there were four gunshot wounds in the body of deceased upon his examination, and one of them went through the left arm just below the elbow, and grazed the back; that another shot entered above the left nipple, ranged downward, and passed out on the right side of the back below the ribs; that a third shot entered the left side of the neck, severing the jugular vein and the carotid artery; that the fourth shot entered the left side of the face about the nose and ranged upward, passing out at the back of the head. Harding testified that the first two shots were fired from his hip in quick succession, that he did not know where they entered the body of deceased; that the last two shots were fired in quick succession at the head of the deceased; and that immediately thereafter he fell and died. The testimony shows that the knife was found open about the hand of deceased lying upon his body.

There was no evidence as to whether the first two shots—that is, the one passing through the arm below the elbow and the one entering the body above the left nipple—were fatal wounds; nor was there any evidence that the wounds were probed, so as to show that the ball was deflected from its direct course. The evidence fails to disclose whether the deceased was at any time within striking distance of the said H. C. Harding before he was shot, and it fails to disclose whether he was nearer than 10 feet of the said Harding before the shots were fired.

We are unable to say that the jury was not justified in finding that the defense had failed to show by a preponderance of the evidence that the deceased made any assault whatever upon the said Harding at any time. Again, we are not able to say that the jury were not justified in believing, from the circumstances testified to by Harding and his wife, that the deceased was not shot while in the sitting position, from the range of the bullet that entered his left breast above the nipple. The evidence further discloses that, if the deceased had made any assault at all, he had abandoned the same, and had retreated some 15 yards or more after such assault, before he was shot in the head and neck, which shots the jury were justified in believing were the cause of the death of deceased.

The writer is of the opinion that, if deceased had made an assault and abandoned it, and was fleeing and overtaken, and again shot, or overtaken by the said Harding with a gun in his hand, that he would have had a right to defend himself, and that the last shots were not the proximate cause of the first assault; that, if he met his death as a result of the last two shots fired, the original assault was not the proximate cause thereof, but the wrongful act of H. C. Harding, and would not, under the terms of the policy forfeit the same; but this last statement is not necessary to a decision of this case. We are therefore of the opinion that there is no merit in the first, third, and fourth propositions of the appellant.

[2] The second proposition complains at the action of the court in limiting the defense to an assault committed at the very time that Walker was shot. The defendant requested, and the court gave, the following special charge:

"Gentlemen of the jury, you are instructed that, if you find and believe from the testimony that David E. Walker, just prior to his death, had attempted to make an assault and battery

upon the person of H. C. Harding, or that he had made an assault, as said term is defined in the general charge of the court, and in consequence thereof was killed by the said H. C. Harding, then you will find in favor of the defendant."

The giving of this special charge certainly relieved the court's main charge of any vice therein complained of upon this ground. We therefore overrule the second assignment of error.

Finding no other error in the record, we are of the opinion that the judgment of the trial court ought to be affirmed; and it is so ordered.

BOYCE, J., and GILLESPIE, Sp. J., concur.